UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROGER L. EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:09-CV-132 CAN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On March 25, 2009, Plaintiff, Roger Evans ("Evans"), filed his complaint with this Court. On July 20, 2009, Evans filed his opening brief asking this Court to enter judgment in his favor or to remand this matter to the Commissioner pursuant to 42 U.S.C. § 405(g). On December 16, 2009, Defendant, Commissioner of Social Security, Michael J. Astrue ("Commissioner"), filed a response in opposition. On December 30, 2009, Evans filed a reply. This Court may issue the following opinion and order pursuant to the consent of the parties and 28 U.S.C. § 636(c).

I.  **PROCEDURE**

On February 7, 2005, Evans filed an application for disability insurance benefits, alleging disability beginning on January 28, 2005. The claim was initially denied on June 13, 2005, then again upon reconsideration on September 14, 2005.

On June 25, 2008, an administrative law judge ("ALJ") filed a decision denying Evans' application for benefits. The ALJ found that Evans had not engaged in substantial gainful activity since January 28, 2005. The ALJ also found that Evans suffered from chronic

1

obstructive pulmonary disease ("COPD") and asthma. However, the ALJ found that Evans did not have an impairment or combination of impairments that would meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then found that Evans had the residual functional capacity ("RFC") to perform light work except that Evans must avoid all exposure to extreme heat, extreme cold, wetness, high humidity, and pulmonary irritants. The ALJ found that while Evans was unable to perform any past relevant work, he would be able to perform work that existed in significant numbers in the national economy consistent with his RFC. Finally, the ALJ found that Evans had not been disabled from January 28, 2005 through the date of the decision, June 25, 2008.

Evans filed a request for review of the ALJ's opinion with the Social Security Appeals Council on September 11, 2008. Evans' petition for review was denied on January 20, 2009, making the ALJ's opinion the Commissioner's final determination. On March 25, 2009, Evans filed an appeal with this Court seeking summary judgment as to his claims or a remand of the ALJ's opinion for reconsideration. This Court may issue the following opinion and order pursuant to the consent of the parties and 28 U.S.C. § 636(c).

## II. ANALYSIS

### A. Facts

Evans was fifty-two years old when the ALJ denied his claim. Evans stands 5'9" and weighs approximately 160 pounds. He has a ninth grade education and can understand English. Evans worked as a farm worker, insulation worker, and assembler. For purposes of disability insurance benefits, Evans is insured through December 31, 2009.

Evans had a history of pulmonary problems prior to his alleged disability onset date. By

1997, Evans shad been diagnosed with COPD and asthma. He smoked two or more packs of cigarettes per day over the past forty years. Before his alleged disability onset date, Evans was hospitalized at least four times for respiratory problems, including chronic cough, wheezing, and shortness of breath.

In October 2002, Dr. Kenneth Hoff, Evans' treating physician, completed a determination of disability form, noting that Evans suffered from COPD, gastroesophageal reflux disease ("GERD"), and bronchospasms. Dr. Hoff determined that Evans' conditions could be controlled with medication and would cause him no functional limitations.

In March 2005, Evans went to the emergency room complaining of tightness in his chest and shortness of breath. The physician at the hospital noted that Evans continued smoking in spite of his COPD. Evans received nebulizer treatments while in the emergency room, which improved his breathing. The emergency room physician prescribed treatment for Evans, including antibiotics and a nebulizer.

In April 2005, Dr. Michael Kennedy, a doctor of internal medicine, examined Evans and found that Evans did not show any limitations as to his back or legs. Dr. Kennedy noted that Evans could walk normally and perform several other maneuvers normally. Dr. Kennedy did not notice any wheezing or other sounds related to obstructed breathing. Also, Dr. Kennedy found that Evans did not experience shortness of breath while performing the minimal exercise required for the pulmonary tests. After his examination, Dr. Kennedy diagnosed Evans with asthmatic bronchitis and gastroesophageal reflux disease, and determined that Evans suffered no limitations that would impair his ability to work.

Also in April 2005, Evans visited Dr. Buonanno, a psychiatrist, who diagnosed Evans

with depressive disorder, not otherwise specified, and indicated that Evans had mild symptoms or some difficulty in social, occupational, or school functioning, but that Evans was generally functioning well and had some meaningful interpersonal relationships.

In June 2005, Evans went to the emergency room complaining of shortness of breath. He had been using his treatment without significant relief. The emergency room physician noted that Evans had significant coarse breathing sounds and wheezing. Evans was admitted to the hospital and given antibiotics. After a chest x-ray, Dr. Hoff diagnosed Evans with an acute exacerbation of COPD and acute bronchitis. After being admitted to the hospital, Evans' breathing improved, and he was discharged two days later.

Later in June 2005, Dr. B. Horton, a state agency psychologist, opined that Evans did not suffer from any mental impairments. Rather, Dr. Horton concluded that Evans' impairments were primarily due to his physical condition. Another state agency psychologist, Dr. W. Shipley, confirmed Dr. Horton's opinion in September 2005.

In July 2005, Dr. M. Ruiz, a state agency physician, opined that Evans' physical impairments were not severe enough to limit his ability to work. Dr. Ruiz noted Dr. Kennedy's examination, which indicated that Evans performed all the tests within normal limits. Also, Dr. Ruiz reported that Evans' pulmonary limitations did not meet or equal any of the listed impairments. In September 2005, Dr. F. Montoya, another state agency physician, confirmed Dr. Ruiz's opinion.

In September 2005, Evans again went to the emergency room complaining of shortness of breath and wheezing. Evans had stopped taking his medication because of financial reasons. The doctor at the hospital noted that Evans was working in a strenuous job and smoking about a

4

pack of cigarettes per day. The emergency room doctor diagnosed Evans with an exacerbation of his COPD.

On October 26, 2005, Dr. Hoff, Evans' treating physician, filled out a pulmonary RFC questionnaire. Dr. Hoff indicated that Evans suffered from COPD and asthma, with symptoms including shortness of breath, orthopnea, chest tightness, wheezing, rhonci, edema, episodic acute asthma, episodic acute bronchitis, episodic pneumonia, fatigue, palpitations, and coughing. Dr. Hoff indicated that Evans experienced severe asthma attacks brought on by upper respiratory infections, irritants, and cold air or changes in the weather. Dr. Hoff noted that Evans was short of breath all day long three times per week. Dr. Hoff found that Evans' limitations were severe enough to constantly interfere with attention and concentration. Dr. Hoff opined that Evans was incapable of performing even lightly strenuous jobs. Dr. Hoff recommended that Evans avoid all extreme temperatures, high humidity, chemicals, and other respiratory irritants. Dr. Hoff opined that Evans would likely miss more than four days of work per month. Dr. Hoff also stated in his report that Evans was compliant with his treatment plan.

On January 23, 2006, Evans went to the emergency room complaining of shortness of breath and running out of medication. A chest x-ray revealed small, benign calcified granulomas. On February 6, 2008, Evans returned to the emergency room coughing up greenish sputum and received nebulizer treatments. On April 12, 2006, Evans again returned to the emergency room complaining of shortness of breath and received medication and nebulizer treatments. On May 12, 2006, Evans went to the emergency room with complaints of chest pain, but his tests revealed no cardiac problems.

On June 6, 2006, Dr. Hoff observed increased dyspnea, bronchospasms, and lethargy.

After one month of treatment, Evans' condition became stable and his dyspnea decreased. By August, Evans returned to Dr. Hoff complaining of increased coughing and congestion, and Dr. Hoff prescribed medication and nebulizer treatments. However, on August 17, 2006, Evans returned to Dr. Hoff complaining of shortness of breath and achiness. Dr. Hoff noted previous diagnoses of COPD and bronchitis, as well as a host of medications. A chest x-ray revealed hyperinflation of the lungs. Dr. Anil Kothari, a radiologist interpreting the x-ray, believed that Evans had chronic stable lung changes with no active pulmonary disease.

In November 2006, Evans went to the emergency room with complaints of cough and shortness of breath over a period of two days. The doctor at the hospital found an exacerbation of COPD and dyspnea, and prescribed medication for Evans. On November 10, 2006, a chest x-ray revealed that Evans had emphysematic lungs with fibrotic changes in both apices from old inflammation with no active pulmonary infiltrate. Evans' dyspnea continued through November 29, 2006.

On December 13, 2006, Evans was admitted to Woodlawn Hospital with pneumonia, leukocytosis, and tobacco use disorder. Evans remained in the hospital for four days, where he was treated with intravenous fluids and medication.

In January 2007, Evans reported that his breathing had improved and that his condition was stable. However, later that month Evans complained of increased coughing, congestion, and shortness of breath. Evans was diagnosed with acute bronchitis and bronchospasms. Within a week, Dr. Hoff noted that Evans had improved.

In September 2007, Evans reported increased coughing and shortness of breath. He was admitted to Woodlawn Hospital and treated with medication and nebulizers. Upon discharge,

Evans was instructed to use his nebulizer and quit smoking, as well as continue taking his other medications. Evans has continued to experience cycles of improvement and deterioration in his breathing.

On October 31, 2007, Evans testified at a hearing that he was unable to work because of his COPD and asthma. Evans stated that these conditions cause him significant difficulty breathing to the extent that Evans finds it difficult to walk. Evans testified that he was able to lift his nineteen-pound granddaughter. He also testified that he had no trouble sitting. Evans further testified that walking, standing and lifting thirty pounds or more made breathing difficult for him. Evans also testified that the medications he took as treatment for his COPD and asthma caused him to become "all wound up like an eight day clock," meaning that he would become jittery and shaky. Evans stated that, at the time of the hearing, he was smoking a pack of cigarettes per day. Evans also stated that he did not have any psychological impairments that affected his ability to work.

At the administrative hearing a vocational expert ("VE") testified that an individual with Evans' limitations, including sensitivity to extreme temperatures and pulmonary irritants, would be able to perform only light work, including production assembler, small products assembler, and inspector/hand packer. The VE testified that such an individual would be able to perform between 6,000 and 8,000 light jobs in the national economy and 1,200 sedentary jobs in the region.

B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345,

351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

    C.    Evans' Motion for Summary Judgment or Remand

To be entitled to benefits under the Social Security Act, Evans must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his

8

determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The issues this Court must resolve are: (1) whether the ALJ's finding that Evans' impairments or combination of impairments were not severe is supported by substantial evidence and free from legal error; (2) whether the ALJ's RFC finding is supported by substantial evidence and free from legal error; (3) whether the ALJ made a proper credibility finding; and (4) whether the ALJ erred in his determination that Evans could perform work found in significant numbers in the national economy.

> 1. The ALJ's determination that Evans' impairments were not severe is not supported by substantial evidence.

Evans contends that the ALJ made an erroneous step two determination regarding the severity of Evans' impairments. Specifically, Evans argues that the ALJ did not sufficiently support his determination that Evans' depression was not severe enough to meet the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. This Court finds that the ALJ's step two determination is sufficiently supported.

At step two of the disability evaluation process, the ALJ must determine if the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521. The claimant bears the burden of showing the that his impairment is severe. 20 C.F.R. § 404.1520(e). As long as the claimant has any severe impairment or combination of impairments, the ALJ will proceed beyond step two and consider the limiting effects of all of the claimant's impairments, severe and non-severe, in the remaining steps of the evaluation process. 20 C.F.R. § 404.1523.

Evans argues that even though the ALJ found Evans' COPD and asthma to be severe impairments, the ALJ erred by not finding Evans' depression and GERD to be severe as well. Specifically, Evans argues that the ALJ failed to properly consider evidence regarding Evans' global assessment of functioning ("GAF") score of 65. Evans contends that while a GAF score is one factor the ALJ should use to make his determination, the ALJ should not rely alone on the GAF score to determine the severity of the limitation. Rather, the ALJ must consider other evidence of limitations. Evans claims that the ALJ "shirk[ed]" his duty and failed to fully analyze Evans' impairments.

The ALJ stated in his opinion that Dr. Buonanno's determination that Evans had a GAF of 65 indicated only mild symptoms, and therefore, would not cause more than minimal limitations in Evans' ability to work. The ALJ did not analyze Evans' mental impairments any further. In particular, the ALJ failed to consider the opinion of Dr. Hoff, Evans' treating physician, who stated that Evans' physical limitations were so severe that they caused problems

with his attention and concentration, thus affecting his mental capacities.

In addition, the ALJ did not support his finding that Evans' GERD was non-severe with any evidence on the record. Instead, the ALJ made a cursory statement that ". . . the evidence indicates that this condition has a good prognosis with medication and therefore, does not establish that this impairment would cause more than minimal limitations . . . ." (Tr. 19). The ALJ does not point to any particular evidence on the record from which this conclusion could be drawn.

This Court finds that the ALJ has failed to build a logical bridge from the evidence to his determination. See Haynes, 416 F.3d at 626. The case may be that Evans' depression and GERD are not severe impairments. However, the ALJ has failed to articulate which evidence supports his determination. On remand, the ALJ must explain his reasoning for finding that Evans' impairments are not severe and discuss the evidence that supports his opinion.

2. The ALJ's RFC finding is not supported by substantial evidence.

Evans additionally argues that the ALJ's RFC determination was not supported by substantial evidence in the record. Evans contends that the ALJ dismissed all of the evidence of record and relied on his own lay opinion as to what the record shows in finding that Evans can still perform light work. Specifically, Evans argues that the ALJ improperly dismissed evidence of COPD because of Evans' smoking. Furthemore, Evans argues that the ALJ improperly considered evidence regarding the consistency of Evans' medication and treatment during the claimed period of disability. Evans also argues that the ALJ improperly dismissed the opinion of Dr. Hoff, Evans' treating physician, who stated that Evans was unable to work.

Although an ALJ need not discuss every piece of evidence, he must consider and

11

evaluate all the record evidence, including evidence that is contrary to his conclusion. Indoranto v. Barhart, 374 F.3d 470, 474 (7th Cir. 2004); Diaz v. Chater, 55 F.3d 300, 307-308 (7th Cir. 1995). Further, an ALJ may not fail to discuss an entire line of evidence. Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995). This Court will reverse an ALJ's decision when the finding "is unreliable because of serious mistakes or omissions." Sarchet v. Chater, 78 F.3d 305, 308 (7th Cir. 1996). See also Carradine v. Barhart, 360 F.3d 751, 754 (7th Cir. 2004) (noting that remand is appropriate when the ALJ "based his determination on serious errors in reasoning").

Evans argues that the ALJ improperly considered Evans' continued smoking despite doctor's recommendations to the contrary. 20 C.F.R. § 404.1530(a) states that "in order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." The failure to follow treatment will result in the denial of benefits. 20 C.F.R. § 404.1530(b). However, the Seventh Circuit has explained that, "essential to a denial of benefits pursuant to Section 404.1530 is a finding that if the claimant followed her prescribed treatment she could return to work." Rousey v. Heckler, 771 F.2d 1065, 1069 (7th Cir. 1985) (explaining that despite the claimant's continued smoking contrary to her doctor's instructions, the ALJ needed to show that if the claimant stopped smoking, she could return to work).

Regarding Evans' smoking, the ALJ determined that in spite of a diagnosis of COPD, Evans continued to smoke cigarettes. The ALJ concluded that such behavior indicated that Evans was not disabled. However, the ALJ did not discuss any evidence that would show that, if Evans quit smoking, he would be able to return to work. The ALJ has also failed to discuss evidence that would show that Evans's COPD would improve if he quit smoking. Because the ALJ failed to discuss whether Evans could return to work if he stopped smoking, this Court finds

12

that the ALJ has not supported his opinion with sufficient evidence in the record. See Rousey, 771 F.2d at 1069.

Evans further contends that the ALJ improperly concluded that Evans was non-compliant in taking his medications. The ALJ's opinion states, "He is also non-compliant with taking his medication." This statement appears as an item in a list of statements describing Evans' habits and limitations. It is unclear from the ALJ's opinion exactly how the ALJ weighed the frequency with which Evans took his medication. In particular, this Court notes that the ALJ did not articulate which statements support Evans' claim of disability and which statements discredit his claim. This Court finds that the ALJ has insufficiently articulated how he determined that Evans' was not taking his medication.

Furthermore, there is evidence on the record showing that Evans was compliant with his prescribed medications, which the ALJ did not discuss in his opinion. For instance, Dr. Hoff, Evans' treating physician stated that Evans was compliant with his treatment. Tr. 296. Because the ALJ did not discuss this evidence in his opinion, the Court cannot determine whether the ALJ's opinion is supported by substantial evidence in the record. See Haynes, 416 F.3d at 626. Thus, this Court concludes that the ALJ has failed to sufficiently explain and factually support his conclusion that Evans was non-compliant with his treatment.

Evans also contends that the ALJ improperly disregarded the testimony of Dr. Hoff, Evans' treating physician, who opined that Evans is unable to work due to his physical limitations. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir.

2006); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p; S.S.R. 96-2p. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870. However, medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Id. Nevertheless, an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p.

> The ALJ stated in his opinion that Dr. Hoff's
>
> opinion may be disregarded because it is not supported by the objective medical evidence set forth above. It is also inconsistent with previous report completed by Dr. Hoff on November 21, 2002 where he indicated that the claimant showed no limitations of activities and his conditions had a good prognosis with medication and there is nothing in the record which establishes that the claimant's condition has significantly worsened from November 2, 2002 to October 26, 2005.

(Tr. 20-21). However, the ALJ does not state what evidence contradicts Dr. Hoff's opinion. Considering that Evans' alleged onset date is January 28, 2005, the report of November 21, 2002 is not sufficient to contradict Dr. Hoff's later opinion. The ALJ also did not address evidence of Evans' numerous visits to the hospital between November 2, 2002 and October 26, 2005, which seem to support Dr. Hoff's opinion that Evans' condition had worsened. As a result, this Court finds that the ALJ did not sufficiently support his determination to disregard Dr. Hoff's opinion.

This Court finds that the ALJ did not sufficiently support his RFC determination because he did not sufficiently articulate his reasons for determining that Evans's continued smoking should disqualify him for benefits, that Evans was non-compliant with his medical treatment, or that the opinion of Dr. Hoff, Evans' treating physician, should be disregarded. On remand, the

14

ALJ must articulate his reasons for making the determination that Evans retained the RFC to perform light work.

        4.      <u>The ALJ's determination that Evans was not credible is not supported by sufficient evidence.</u>

Evans argues that the ALJ failed to articulate any reasons for finding Evans' testimony not credible as regarding the intensity, persistence and limiting effects of his symptoms. Because an ALJ is in a special position where he can hear, see, and assess witnesses, an ALJ's credibility determinations are given special deference, and as a result, an ALJ's credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003); <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001). However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. <u>Golembiewski v. Barnhart</u>, 322 F.3d 912, 915 (7th Cir. 2003); <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an the individual's allegations have been considered or that the individual's allegations are not credible. <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2004); <u>Golembiewski</u>, 322 F.3d at 915; <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001); S.S.R. 96-7p.

In his opinion the ALJ stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity.

Tr. 20. This Court agrees with Evans that this minimal explanation by the ALJ fails to state

which evidence contradicts Evans' testimony. Instead , the ALJ simply recited an incomplete version of Evans' medical history and some of Evans' testimony regarding his daily activities. However, the ALJ did not articulate how he considered the evidence presented or how he weighed that evidence against Evans' testimony. In particular, the ALJ failed to note how the limitations indicated by Evans' physicians contradicted Evans' statements regarding his own ability. Dr. Hoff, for example, indicated that Evans was only capable lifting ten pounds and noted that Evans frequently missed more than four days of work in a month. This evidence is consistent with Evans' testimony regarding his daily activities. However, the ALJ failed to discuss this evidence when considering Evans' credibility. Thus, this Court finds that the ALJ did not sufficiently support or explain his credibility finding. On remand, the ALJ must articulate which evidence contradicts Evans' testimony regarding his daily activities.

    4.    <u>The ALJ's determination that Evans could perform a significant number of jobs is not supported by substantial evidence.</u>

Finally, Evans argues that the ALJ improperly framed his hypothetical to the VE regarding the jobs available to someone with Evans' limitations. When posing hypotheticals to a VE, the regulations require that the ALJ consider the combined effects of a claimant's impairments. 20 U.S.C. § 404.1523. To the extent the ALJ relies on the testimony from a VE, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers in order to accurately gauge how many jobs are available to the claimant in the national economy. <u>Young v. Barnhart</u>, 362 F.3d 995, 1003 (7th Cir. 2004).

As discussed previously, the ALJ improperly failed to evaluate all of the relevant medical evidence regarding Evans' RFC. Because the ALJ's presentation of questions to the VE was based on an improper RFC assessment, the ALJ's reliance on the VE's testimony regarding the

16

availability of jobs must be revisited on remand to incorporate the ALJ's reconsidered RFC determination.

### III. CONCLUSION

For the above reasons, Evans' request for remand is **GRANTED,** [Doc. No. 12], and this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g). The clerk is instructed to term the case.

**SO ORDERED**.

**Dated this 18th Day of February, 2010.**

 S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge